UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| PEOPLES BANK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil No. 16-34-ART ) ) |
| FOSSIL COAL, LLC, et al., | ) **MEMORANDUM OPINION AND** |
| Defendants. | ) **ORDER** ) ) |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Jurisdiction is usually an offer the federal courts can't refuse: If Congress has granted it to them, they must exercise it. The parties in this case agree that the Court has diversity jurisdiction. The question presented is whether this case is one of the rare circumstances in which the Court may refuse to exercise it. For the reasons stated below, the answer is no.

**I.**

Coal mining is complicated business, but at the very least it requires three people: someone to mine the coal, someone to transport the coal, and someone to finance the operation. Here, Fossil Coal mined the coal. *See* R. 28-2 ¶ 13. Producer's Coal transported the coal. *Id.* ¶ 14. And Peoples Bank helped finance the operation. *Id.* ¶ 22.

In 2013 and 2014, Fossil says, Producer's began stretching itself too thin. *Id.* ¶ 18. During that time, Producer's "embarked on a program of acquiring certain coal[-]producing properties" of its own. *Id.* That program took a lot of money, and so—according to Fossil— Producer's stopped paying for the coal Fossil supplied. *Id.* ¶ 21.

That arrangement was not working for Fossil. So in April 2014, the two companies sat down with a banker from Peoples to work something out. According to Fossil, that banker assured Fossil "that Producer's was in a strong financial position." *Id.* ¶ 22. That banker advised Fossil to open a line of credit at Peoples "to mitigate the difficulties Fossil had experienced as a result of Producer's non-payment." *Id.*

On May 1, 2014, Fossil apparently took that advice and opened a two-million-dollar line of credit at Peoples. R. 1 ¶ 12; R. 1-2 (business loan agreement). That line of credit was secured by Fossil's assets, R. 1 ¶ 16; R. 1-4 (security agreement), which, Fossil says, were mainly its equipment and the money that Producer's still owed it, R. 28-2 ¶ 24. Fossil promised to pay the loan back by May 1, 2015. R. 1 ¶ 14; R. 1-3 (promissory note). The head of Fossil even signed a guaranty that Fossil would pay off the loan on time. R. 1 ¶¶ 18–19; R. 1-7 (Wright guaranty). May 1 came and went, however, and Fossil had not paid off the loan. Peoples agreed to modify the terms of the loan and to push the payment date to December 1, 2015. R. 1 ¶¶ 20–21; R. 1-8 (change-in-terms agreement). Fossil's affiliated companies signed even more guaranties that Fossil would pay off the loan on time. R. 1 ¶¶ 24–27. But when December 1 rolled around, Fossil still had not paid. *Id.* ¶ 28. And its various guarantors had not, either. *Id.* ¶¶ 32–34. So Peoples sued Fossil in federal court. *See generally id.* Peoples seeks judgments on the loan, security agreement, and guaranties. *Id.* ¶¶ 36–64.

Fossil then brought a suit of its own, this time in state court. R. 28-2. Fossil alleges that Peoples (and Producer's) knew about the "true precarious financial situation [at Producer's]." R. 28-2 ¶ 25. Had they disclosed this situation, Fossil says, "[Fossil] would

2

not have entered into the [line of credit] with Peoples Bank and would have severed [its] relationship with Producer's[.]" *Id.* Fossil sued Peoples and Producer's, along with the individual banker and the head of Producer's, on various state-law tort claims: fraud, breach of good faith, interference with business advantage, and civil conspiracy. *Id.* ¶¶ 37–50, 66–69. Fossil also sued Peoples and Producer's for breach of contract. *Id.* ¶¶ 57–65. And finally it sued Peoples for negligence and accounting failure. *Id.* ¶¶ 51–56, 70–71.

In short, Peoples wants it money back, and Fossil wants damages. But they do share one desire: to litigate their claims in one court and one court only. For Peoples, that court is this one. Thus, Peoples asked the state court to dismiss Fossil's suit, or alternatively to stay it under Kentucky's abatement doctrine. R. 29-1. The state court refused. R. 28-3 (Floyd Circuit Court order). So now it is Fossil's turn. Fossil asks this Court to dismiss Peoples' federal suit—or alternatively to hold it in abeyance—under the so-called *Colorado River* abstention doctrine. R. 28; *see Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

## II.

Federal courts "have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). In certain rare circumstances, however, a federal court will abstain from hearing a case that is properly before it. One of those circumstances is known as the *Colorado River* abstention, which applies when a federal case involves substantially the same parties and issues as a parallel case in state court. *Colo. River*, 424 U.S. at 817–821. But as the Supreme Court emphasized in *Colorado River* itself, abstention is "the exception, not the rule." *Id.* at 813. Convincing a

court to abstain under *Colorado River* is a bit like running a steeplechase. And the first hurdle is that the federal and state actions must in fact be "parallel." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998).

Here, both parties agree that the state and federal actions are parallel. By asking for abstention, Fossil clearly thinks so. And Peoples has said that it thinks so, too. R. 34 at 4 ("Peoples' position now is the same as it was when it . . . moved to dismiss the Floyd Circuit Action based on Kentucky's abatement doctrine: these cases are substantially the same."). Indeed, Peoples has filed in the state court a counterclaim complete with the exact same allegations that Peoples brought to federal court. R. 30-2 at 10–20. So Fossil has cleared the first hurdle for abstention.

But beyond that hurdle lies the gamut of factors that determine whether a given case is one of those exceptional few that a federal court should choose not to hear. The factors are:

(1) whether the state court has assumed jurisdiction over any res or property;

(2) whether the federal forum is less convenient to the parties;

(3) whether the two cases would cause piecemeal litigation;

(4) the order in which the state and federal courts obtained jurisdiction;

(5) whether the source of governing law is state or federal;

(6) whether the state court will adequately protect the federal plaintiff's rights;

(7) how far the state and federal cases have proceeded; and

(8) whether or not the courts have concurrent jurisdiction over the issues.

*Romine*, 160 F.3d at 340–41. These factors are not a checklist—the Court will not automatically disqualify an abstention seeker who stumbles at factor three or factor six. Rather, the Court must perform a "careful balancing" of the factors. *Id.* at 341 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15–16 (1983)). The scales initially tilt toward exercising jurisdiction. *See Moses H. Cone*, 460 U.S. at 16. But if a party can stack enough factors on the other side, the court must stay the case. *See Bates v. Van Buren Twp.*, 122 F. App'x 803, 809 (6th Cir. 2004) (concluding that a stay, rather than a dismissal, is the appropriate result of a *Colorado River* abstention).

Here, some factors have no weight at all. Neither the state nor federal action involves any real property (factor one). Both the state and federal courts have jurisdiction to hear the claims (factor eight), and both can adequately protect Peoples' rights (factor six). And because the federal courthouse sits just twenty-six miles from the state courthouse, both forums would appear to be equally convenient (factor two). *See PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 207 (6th Cir. 2001) (deeming the federal court no less convenient than the state court located close by). One factor weighs on the abstention side—that the state provides the governing law (factor five). But the weight is light. Federal courts are capable of deciding "routine" issues of state law, such as whether a defendant committed fraud or breached a contract. *United Am. Healthcare Corp. v. Backs*, 997 F. Supp. 2d 741, 753 (E.D. Mich. 2014). And two factors (four and seven) seem to offset. The state proceeding has seen slightly more action, since the state court has already ruled on a motion (factor seven). But neither case has advanced far beyond the initial pleadings—according to Peoples, no discovery has occurred. R. 29 at 13. And although this Court obtained jurisdiction first

(factor four), the state suit followed close behind. All told, none of these factors tips the scales into the "exceptional" zone where a federal court must relinquish its jurisdiction. *Colo. River*, 424 U.S. at 813.

One factor remains: the danger of piecemeal litigation (factor three). That danger is the "paramount" reason why the *Colorado River* abstention doctrine exists in the first place. *Moses H. Cone*, 460 U.S. at 19. When two courts adjudicate the same issue, they "duplicat[e] judicial effort" and "potentially render[] conflicting results." *Romine*, 160 F.3d at 341. Although waste and confusion are good to avoid, "the mere potential for conflict" does not alone "warrant staying [the] exercise of federal jurisdiction." *Colo. River*, 424 U.S. at 816. After all, federal courts still have that "virtually unflagging obligation" to use the jurisdiction Congress gives them. *Id.* at 817. Plus, if a case could exist only in one place at one time, parallel actions would not be permitted at all—and if the federal suit were filed later, the court would simply abstain rather than pull out its *Colorado River* balancing scales. Thus, in deciding whether to abstain, a court must ask not only whether there *is* a danger of piecemeal litigation, but also whether there is a "clear federal policy" against piecemeal litigation in a given context. *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) (quoting *Colo. River*, 424 U.S. at 819) (internal quotation marks omitted).

Here, no such policy exists. The applicable statutes are all Kentucky statutes, which, by definition, do not express any federal policy, "clear" or otherwise. *See Flathead-Mich. I, LLC v. Sutton's Pointe Dev., LLC*, No. 1:09-CV-1006, 2010 WL 2163819, at *3 (W.D. Mich. May 26, 2010) ("Here all the statutes at issue are *Michigan* statutes . . . so by

definition they would not evince or express any view of its enactors regarding *federal policy*[.]"). This case presents "garden-variety" state-law issues that federal courts sitting in diversity can, and often do, decide. *Ryan v. Johnson*, 115 F.3d 193, 198 (3d Cir. 1997). There is no federal-policy reason for the Court to refrain from adjudicating them here.

Moreover, if Fossil was really so concerned about piecemeal litigation, it could have brought its claims in federal court.[1]  To gain an abstention, a party must give the court an exceptional reason to abstain—not simply create a problem and then ask the court to fix it. *Cf. PaineWebber*, 276 F.3d at 202 (noting that "the possibility of having to proceed simultaneously in both state and federal court is a direct result of [the defendant]'s decision to file a suit . . . in state court"). By choosing to file its claims in state court, Fossil took the risk of piecemeal litigation. And despite Fossil's best efforts, that maneuver does not thwart federal jurisdiction, or the Court's duty to exercise it.

Fossil responds that, by filing a counterclaim in state court, Peoples "has essentially waived this Court's jurisdiction." R. 30 at 6–7. The Court will assume that Fossil means to say that Peoples has voluntarily dismissed the federal action. But Peoples has not moved to dismiss its case. Actually, Peoples has been very clear about "its desire to pursue its claims against [Fossil] in its chosen forum." R. 34 at 5. When parallel actions occur in two courts, a party has little choice but to protect its interests in both courts. That party does not waive the jurisdiction of its chosen forum simply by defending itself in a forum where it did not

---

[1] Indeed, Fossil might well have to.  As Peoples points out, Fossil's various fraud, negligence, and breach-of-contract claims arise from the same "transaction or occurrence" that underlies the federal action. R. 29 at 3–4 n.1. And under Federal Rule of Civil Procedure 13, a party "must" bring as a counterclaim any claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A).

7

choose to be. So that argument fails. And for the reasons stated above, the Court must deny Fossil's request for a *Colorado River* abstention.

## CONCLUSION

When a party asks a federal court to abstain under *Colorado River*, the court's task "is not to find some substantial reason for the *exercise* of federal jurisdiction." *Moses H. Cone*, 460 U.S. at 25. Rather, its task is to look for any "exceptional circumstances" that might "justify the *surrender* of that jurisdiction." *Id.* at 25–26 (internal quotation marks omitted). Fossil has not shown any exceptional reason why the Court should abstain. Because no such reason exists, the Court will exercise its jurisdiction.

Accordingly, it is **ORDERED** that Fossil's motion to dismiss or in the alternative hold this matter in abeyance, R. 28, is **DENIED**.

This is the 18th day of July, 2016.

Signed By:
*Amul R. Thapar*  AT
United States District Judge